UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 23-cr-301 (CRC) |
| | : | |
| TONYA WEBB, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION *IN LIMINE* REGARDING THE SCOPE OF COUNTS TWO AND THREE**

The United States respectfully submits its opposition to the defendant's Motion *in Limine Regarding the Scope of Counts Two and Three*. ECF No. 27. The defendant moves to preclude the government from "asserting in its closing argument that the actus reus elements of Counts Two and Three – both of which proscribe 'disorderly or disruptive conduct – can be established by evidence of any conduct that is not itself inherently disorderly or disruptive." *Id*. at 1. The defendant concedes that the court must deny this motion because the D.C. Circuit has considered and rejected the argument. See *United States v. Alford*, 89 F.4th 943 (D.C. Cir. 2024). Thus, the defendant has filed this motion to preserve the argument should the United States Supreme Court reverse *Alford*. See ECF No. 27 at 1-2; S.Ct. Doc. No. 23-7158.

**I.      Facts**

The facts of *Alford* and the instant case are similar. Both Alford and Webb had traveled from out of state to attend the then-President's January 6 rally at the ellipse. Afterward, both Alford and Webb followed the crowd to the United States Capitol. See *Alford*, 94 F.4th at 947. While outside the Capitol, both Alford and Webb observed other rioters engaging in various activity—in fact, Webb observed at least one rioter enter the Capitol through a broken window.

Alford entered the building a bit after 2:00pm through the Upper House Door, and Webb did so at 2:44pm through the Parliamentarian's Door. Both Alford and Webb took photos while inside the building. *Id*. Alford exited after 13 minutes and did not return; Webb exited after 7 minutes and then re-entered the Capitol through the Senate Wing Door and remained inside for 29 additional minutes before exiting.

According to the defendant's statement to the FBI, her purpose was to "show Congress that they had the support of a large amount of people" to remedy what she characterized as "irregularities" in the 2020 election. Part of the "support" that Webb provided was throwing a flag inside the Capitol, which she did just prior to entering the building the second time.

Both Alford and Webb were charged with the exact same crimes: Count One: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Count Two: Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Count Three: Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5103(e)(2)(D); and Count Four: Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

## II.     Argument

The defendant's argument focuses on the actus reus connected to Counts Two and Three, which both proscribe disorderly conduct in the Capitol Building. In essence, she argues that mere presence is not enough; instead, in her view, the Government must prove some act that is, in her words, "inherently disorderly" to sustain a conviction on those two counts. This argument is foreclosed by *Alford*, in which the Court held that such a narrow interpretation of the statutes is

mistaken. 94 F.4th at 949. The *Alford* Court directly addressed most of the arguments advanced by Webb in her *Motion in Limine*, which the United States will discuss *ad seriatim*.

> 1. *The statutory context of 18 U.S.C. § 1752(a)(2) does not displace the plain meanings of "disruptive conduct" and "disorderly conduct"*

The defendant argues that the statutory context of 18 U.S.C. § 1752(a)(2) (Count Two) narrows the normal and commonly understood meanings of "disorderly conduct" and "disruptive conduct," limiting them to *inherently* disorderly or disruptive conduct. Specifically, the defendant argues that the inclusion of a "harm" element in Count Two, i.e., that the conduct impeded or disrupted the orderly conduct of Government business, is a "strong textual indication that the actus reus focuses elsewhere." ECF No. 27 at 3. In other words, the defendant suggests that applying the normal understanding of "disorderly or disruptive conduct" will create surplusage because any conduct done with "intent to impede, disrupt, or disturb" will inevitably qualify, thereby reading "disorderly or disruptive" out of the statute.

By its plain terms, the defendant's argument relies on this court adopting the view that *all* conduct is either "disorderly and disruptive" all the time, or it never is under any circumstances. Indeed, the defendant's argument crumbles if the Court were to conclude that a context-based analysis is required to determine if conduct qualifies as "disorderly and disruptive." Under such a context-based inquiry, it would not necessarily be "inevitable" that all conduct done with "intent to impede, disrupt, or disturb" would qualify as "disorderly or disruptive." ECF No. 27 at 3. Thus, the defendant has no choice but to argue that the Court's inquiry is binary: either *all* conduct is either "disorderly and disruptive" all the time, or it never is under any circumstances. The defendant leaves this Court no room to consider context.

3

But, as the *Alford* Court observed, "almost no conduct is always and innately disruptive or disorderly." *Alford*, 89 F4th at 951. Indeed, it would be difficult to conceive of behavior that would always be disruptive or disorderly, no matter when or where it occurred. For example, blasting a vuvuzela at the World Cup is appropriate and expected, while the same behavior conducted in the courtroom gallery would obviously be disruptive and disorderly. The only difference is context.

Since context matters, it follows that the elements of § 1752(a)(2) do independent work. Recognizing that, the *Alford* Court held:

> Nor is it apparent that focusing on the likely effect of an action yields surplusage in § 1752(a)(2), as Alford contends. An action can have a disruptive effect and yet not succeed in hindering a governmental proceeding. For instance, someone clicking a pen repeatedly during a Senate hearing may be acting disruptively, but if the hearing nonetheless proceeds smoothly, the clicking will not have "in fact, impede[ed] or disrupt[ed] the orderly conduct of Government business." In that scenario, § 1752(a)(2)'s actus reus and its harm element both carry independent meaning even without restricting the actus reus to inherently disruptive conduct.

*Alford*, 89 F.4th at 951. The defendant's argument failed because it overlooked the fact that overlap between statutory elements is not uncommon. By punishing "disorderly or disruptive conduct" with "intent to impede or disrupt," conduct that satisfies one of those elements will very often satisfy the other. Responding to that foreseeable overlap by narrowing the plain, established meaning of "disorderly or disruptive conduct" would distort the statute.

Thus, this Court should follow the lead of *Alford* and deny the motion.

*2. The canon of noscitur a sociis does support the defendant's argument.*

The defendant argues that because Section 5104(e)(2)(D) (Count Three) covers "utter[ing] loud, threatening, or abusive language, or engag[ing] in disorderly or disruptive conduct," 40 U.S.C. 5104(e)(2)(D), the interpretive canon of noscitur a sociis (a word is known by the company it keeps) requires reading "disorderly or disruptive conduct" to cover only conduct whose "nature" is disorderly and disruptive. She is wrong.

The noscitur a sociis principle can help a court choose among alternative reasonable interpretations of a word or phrase in a list. See, e.g., *Russell Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923). But the defendant identifies no alternative reasonable interpretation of the phrase "disorderly or disruptive conduct" that is consistent with its plain language, is workable, or can be determined in isolation without regard to context. Furthermore, "[c]anons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979).

In rejecting this same argument, the *Alford* Court that:

> This canon "avoid[s] ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Yates v. United States*, 574 U.S. 528, 543 (2015) (quotation omitted). But for the canon to apply, the group of words must share "a relevant common attribute," *Ali v. Federal Bureau of Prisons0*, 552 U.S. 214, 225 (2008), or "a common feature to extrapolate," *S.D. Warren Co. v. Me. Bd. of Env't Prot.*, 547 U.S. 370, 380 (2006). No such common attribute or feature exists here. The statute simply puts two different prohibitions side by side without providing the context clues needed to link one to the other substantively. See *id*. at 379 (rejecting the argument that, without more, "pairing a broad statutory term with a narrow one shrinks the broad one").

*Alford*, 89 F.4th at 952. This Court should deny the motion for the same reason.

5

3. *State laws shed no light on the proper construction of 18 U.S.C. § 1752(a)(2) and 40 U.S.C. § 5104(e)(2)(D)*

Finally, the defendant argues that the proper interpretation of the provisions of 18 U.S.C. § 1752(a)(2) and 40 U.S.C. § 5104(e)(2)(D) are constrained by certain state laws on disorderly or disruptive conduct that are expressly limited to conduct such as making a loud noise, fighting, or engaging in violence.  But, the fact that some states have limited disorderly-or-disruptive-conduct statutes to particular types of conduct does not mean that Congress incorporated similar limits into Sections 1752(a)(2) and 5104(e)(2)(D).  To the contrary, the defendant's argument shows nothing more than that Congress could have written the federal statutes more narrowly but chose not to do so.

## CONCLUSION

As the defendant concedes, this *motion in limine* is controlled by the holding in *United States v. Alford*, 94 F.4th 943 (2024).  Consequently, the Court should deny the motion in its entirety.

Case 1:23-cr-00301-CRC   Document 31   Filed 07/29/24   Page 7 of 7

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052


By:   /s/ *Jack E. Burkhead*
     Jack E. Burkhead
     Assistant United States Attorney
     NM Bar No. 10493
     601 D Street NW
     Washington, DC
     505-350-8113
     jack.e.burkhead@usdoj.gov